IN THE UNITED STATES DISTRICT COURT OF

SOUTH CAROLINA

KILLIAN-MORRIS

    PLAINTIFF

**JURY TRIAL DEMAND**

REQUEST FOR TEMPORARY RESTRAINING ORDER AND PERMANENT INJUNCTIVE RELIEF

VS.

**COMPLAINT FOR DAMAGES**

CASE NUMBER:

<u>2:25-CV-10336-BHH-MGB</u>

LEXISNEXIS

    DEFENDANTS

_____/

**INTRODUCTION**

1. The KILLIAN-MORRIS "(KM)" brings this action against LEXISNEXIS RISK SOLUTIO N"LEXISNESXIS"or "the Company") under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., and the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. 24

COMPLAINT

    This action alleges that LexisNexis violated both Acts by failing to reasonably reinvestigate consumer disputes challenging the accuracy or completeness of information in consumer reports, including by failing to forward all relevant information to furnishers, failing to provide adequate or accurate notice to consumers of the outcome of their disputes, and failing to utilize reasonable procedures to ensure the accuracy and completeness of information in consumers' files.

2. LexisNexis is one of the largest consumer reporting agencies ("CRAs") in the country. A primary aspect

of its business is collecting and organizing data on most adult Americans to generate consumer reports, consumer file disclosures, and credit scores that reflect consumers' credit activity and history. As LexisNexis acknowledges, its consumer reporting services "play an integral part in the financial lives of millions of people."

3. This is because LexisNexis sells its consumer reports to creditors and businesses who are evaluating whether to offer a consumer various products, services, and opportunities, such as a loan, a job, or housing.

4. Information reflected in consumer reports is provided to CRAs by data furnishers, such as banks, credit card companies, or debt collectors, and other sources. Errors in consumer reports can be significant for consumers, resulting in the denial of credit, employment, or housing, or being offered less favorable credit terms.

5. Recognizing the serious consequences borne by consumers when their consumer reports contain inaccurate information, Congress enacted the FCRA in 1970 to, in part, "[e]nsure that consumer reporting agencies [like LexisNexis] exercise their grave responsibilities with fairness, impartiality and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(1)-(4).

6. The FCRA demands that CRAs use reasonable procedures to assure maximum possible accuracy of information contained in consumer reports, 15 U.S.C. § 1681e(b), and provides a mechanism for consumers to dispute any incomplete or inaccurate information in their report. 15 U.S.C. § 1681i.

7. When a consumer disputes the accuracy or completeness of information in their consumer report, the FCRA requires LexisNexis to conduct a "reasonable reinvestigation" of the disputed information and report the results of the reinvestigation to the consumer, all within certain timelines. 15 U.S.C. § 1681i(a). At the conclusion of the reinvestigation, LexisNexis must modify or delete any item of information found to be inaccurate or incomplete, or that it could not verify. 15 U.S.C. § 1681i(a)(5). For any information deleted as a result of a dispute, the FCRA imposes specific obligations on LexisNexis that

must be satisfied before that information may be reinserted into a consumer's file. 15 U.S.C. § 1681i(a)(5)(C).

8. Despite its obligations under the FCRA, LexisNexis fails consumers who dispute information in their consumer reports at every stage of the dispute process.

9. First, LexisNexis's faulty intake procedures fail to accurately convey all relevant information regarding the dispute to the original furnisher of the disputed information, and, at times, LexisNexis simply fails to provide furnishers with consumer-submitted documentation that supports the dispute,

10. Second, LexisNexis uncritically accepts the original furnisher's response to the disputed information, even when that response was improbable or illogical on its face or when LexisNexis has other information in its possession that alerts or should alert LexisNexis to the possibility that the furnisher might be unreliable.

11. Third, at the conclusion of its reinvestigation, LexisNexis sends consumers notices that fail to inform them of the reinvestigation results, and instead provides information that is confusing, ambiguous, incorrect, and internally inconsistent.

12. Additionally, LexisNexis's problematic dispute resolution processes have resulted in several other issues, including LexisNexis's outright failure to reinvestigate a significant number of disputes within the timeline required by the FCRA, its ongoing refusal to reinvestigate hard inquiry disputes, and its routine failure to ensure that previously deleted trade lines are not improperly reinserted into a consumer's file.

13. LexisNexis's faulty dispute intake procedures and failure to provide furnishers with consumer-submitted documentation, uncritical deference to furnishers' response to the disputed information, and failure to inform consumers of the results of reinvestigations also violate the CFPA's prohibition on unfair acts or practices. 12 U.S.C. § 5531(c)(1).

14. LexisNexis's failures are an abdication of its obligations under the FCRA and the CFPA, and the Bureau brings this action to rectify these failings and impose civil money penalties.

## VENUE

15. Venue is proper in this district because the Defendant resides and does business in this district. 12 U.S.C. § 5564(f).

## PARTIES

16. The Bureau is an independent agency of the United States created by the CFPA. 12 U.S.C. § 5491(a). The Bureau has independent litigating authority and is authorized to initiate civil actions in federal district court to secure appropriate relief for violations of Federal consumer financial law, 12 U.S.C. §§ 5564(a)-(b) and 5565, including the FCRA and the CFPA, 12 U.S.C. § 5481(12)(F) and (14).

17. LexisNexis is a nationwide consumer reporting agency with its North American Headquarters in Costa Mesa, California. At all times material to this Complaint, LexisNexis transacted business in this district and nationwide.

18. LexisNexis collects, analyzes, maintains, or provides consumer report information or other account information, including information related to the credit history of consumers. This information is used or expected to be used in connection with any decision regarding the offering or provision of a consumer financial product or service. These products or services are consumer financial products or services covered by the CFPA. 12 U.S.C. § 5481(5) and (15)(A)(ix).

19. Further, LexisNexis offers consumer reports, consumer file disclosures and credit scores, which are consumer financial products or services because they are or relate to consumer reports or other account information, including information relating to the credit history of consumers that LexisNexis collects and maintains about a consumer's account. LexisNexis offers or provides these financial products and services to consumers primarily for personal, family, or household purposes, and delivers, offers, and provides them in connection with consumer financial products or services such as consumer credit.

These products or services are therefore consumer financial products or services covered by the CFPA. 12 U.S.C. § 5481(5) and (15)(A)(ix).

20. Because LexisNexis engages in offering or providing a consumer financial product or service, LexisNexis is a "covered person" under the CFPA. 12 U.S.C. § 5481(6).

21. LexisNexis is a "consumer reporting agency" as defined by the FCRA. See 15 U.S.C. § 1681a(f). LexisNexis compiles and maintains files on consumers on a nationwide basis as that term is defined in the FCRA, 15 U.S.C. § 1681a(p). LexisNexis is therefore subject to the FCRA.

## BACKGROUND

22. The FCRA imposes a variety of obligations on CRAs like LexisNexis to ensure that they report accurate information in consumer reports.

23. A core obligation is that if a consumer disputes the completeness or accuracy of information in their consumer report, the CRA must "conduct a reasonable reinvestigation" to determine whether the disputed information is accurate. 15 U.S.C. § 1681i(a)(1)(A). 2

4. Within five business days of receiving the dispute, the CRA must provide notice of the dispute to the furnisher of the disputed information. A furnisher is any entity that provides financial information about a consumer to a CRA, such as a bank, credit card company, or debt collector furnisher must include all relevant information received by the CRA regarding the dispute. 5 U.S.C. § 1681i(a)(2)(A).

25. The CRA must complete the reinvestigation within 30 days after the dispute is received unless an extension is sought. 15 U.S.C. § 1681i(a)(1)(A).

26. After the reinvestigation, the CRA must provide the consumer "written notice" of the "results of the

reinvestigation" no later than five business days after its completion. 15 U.S.C. § 1681i(a)(6)(A).

27. The FCRA further requires that the furnisher maintain reasonable procedures to prevent the reinsertion of previously deleted information, notify consumers within five business days if previously deleted information was reinserted, and ensure maximum possible accuracy of consumer reports. 15 U.S.C. §§ 1681i(a)(5)(B), (C), 1681e(b). e-OSCAR and the ACDV Process

28. When a CRA receives a consumer dispute, the primary way information about the dispute is communicated to furnishers is on a web-based platform called e-OSCAR. Information about the disputed information is transmitted over the e-OSCAR platform via an Automated Credit Dispute Verification form ("ACDV").

29. The ACDV is a one-page form that contains identifying information about the consumer such as name, address, social security, and date of birth. The ACDV also reflects the disputed account (also known as a tradeline) as it is currently reported. The ACDV provides limited information about the consumer's dispute, including a three-digit "dispute code" that indicates the basis of the dispute. There is sometimes a short free-form description of the dispute, based on information provided by the consumer. The ACDV may also have other relevant information attached to it, including consumer-submitted documentation supporting the dispute.

30. Below is a reproduction of an LexisNexis ACDV: 31. After the furnisher reviews the information provided in and attached to the ACDV, it returns the ACDV to the CRA, indicating with a two-digit "response code" whether the disputed information is accurate or should be modified or deleted.

32. The ACDV is typically the only way CRAs and furnishers communicate during a reinvestigation

**FACTUAL ALLEGATIONS**

LexisNexis, Fails to Adequately Convey All Relevant Information to Furnishers 33. Consumers who identify inaccurate or incomplete information in their LexisNexis consumer report can submit disputes

to LexisNexis by mail, over the telephone, or electronically through LexisNexis's website (its "Online Dispute Center") or mobile application. LexisNexis typically processes over a million consumer disputes per month.

34. When submitting a dispute, consumers can, and frequently do, support their disputes by submitting relevant documentation, such as bank statements, canceled checks, or settlement agreements, among other things. Consumers can submit supporting documents via mail or electronically.  35. For disputes accompanied by consumer-submitted documentation, LexisNexis's policies require that its agents determine whether the documents are sufficiently conclusive for LexisNexis to make the change requested by the consumer. LexisNexis refers to this as making an "internal update."  36. LexisNexis resolves a minority of disputes via an internal update. If LexisNexis does not make an internal update, it prepares an ACDV to transmit to the furnisher through e-OSCAR. LexisNexis's policy directs its agents to attach any consumer-submitted documentation that contains additional relevant information to the ACDV, although in some cases its agents fail to do so.

37. The dispute codes included in the ACDV are integral to the dispute resolution process. As explained above, dispute codes are used by LexisNexis to communicate the underlying basis of the dispute to the furnisher.

38. Because LexisNexis relies on the ACDV to communicate with furnishers about consumer disputes, it is important that LexisNexis's selected dispute code accurately conveys the basis of the dispute to the furnisher. But LexisNexis routinely sends dispute codes to furnishers that mischaracterize or fail to convey highly relevant information about consumers' disputes.

39. Many of these failures stem from LexisNexis's Online Dispute Center. When consumers submit a dispute on the Online Dispute Center, they select a dispute description from a prepopulated list to categorize the nature of their dispute, which LexisNexis then translates into a formal e-OSCAR dispute code that it inputs into the ACDV. LexisNexis's Online Dispute Center presents consumers with a significantly smaller set of dispute descriptions than LexisNexis uses when consumers have submitted

mail and telephone disputes. On the Online Dispute Center, for example, there are no dispute descriptions that correspond to formal eOSCAR codes for account settled, date of first delinquency disputed, paid by insurance, consumer stated company will delete, and consumer stated company will change.

40. As an illustration, LexisNexis's Online Dispute Center instructs consumers to select a dispute description of "Account paid in full" if consumers "believe [they] have paid the account in full or that it was paid in settlement." A separate dispute description for account settled is not available to consumers on the Online Dispute Center, even though it would more precisely describe the nature of the dispute.

41. When LexisNexis then notifies the furnisher about these disputes via an ACDV, it translates the dispute description selected by the consumer to the formal dispute code indicating that the consumer is disputing the account's status (i.e., whether the lender or creditor considers the account current or in collections), even though a separate, more precise e-OSCAR dispute code exists that would indicate to the furnisher that the consumer is claiming the disputed account has been settled. Indeed, LexisNexis makes no use of the e-OSCAR settlement dispute code for disputes received through the Online Dispute Center.

42. This is just one example of how furnishers receive either a mischaracterization or a less precise description of the basis for disputes submitted via the Online Dispute Center.

43. Other failures stem from LexisNexis's frequent use of an inaccurate or confusing dispute code when processing disputes submitted via telephone or mail. For example, when a consumer lodges a dispute claiming that an account was paid, LexisNexis inserts into the ACDV the e-OSCAR dispute code labeled "Claims account closed" instead of an appropriate dispute code for paid accounts.

44. As another example, LexisNexis inserts into the ACDV the intentionally generic e-OSCAR dispute code labeled "Claims inaccurate information. Did not provide specific dispute." even where the consumer provides specific information pertaining to the dispute, such as disputing the date of first

delinquency or the payment of an account, and for which a more specific dispute code, such as "Disputes Date of First Delinquency" and "Disputes present/previous Account Status, History" is available and appropriate.

45. And as another example, LexisNexis agents apply dispute codes requesting updates that are already reflected on consumers' trade lines and therefore do not correspond to the actual substance of consumers' disputes. As one illustration, agents apply the "Claims account closed" dispute code to trade lines that already display as closed. The fact that the update requested is already reflected on the trade line suggests that the basis for the underlying dispute differs from the dispute code selected by LexisNexis, and that LexisNexis has not accurately described the nature of the dispute to the furnisher.

46. By failing to select appropriate dispute codes, LexisNexis fails to accurately convey the basis of the consumers' disputes to furnishers in what is usually the only communication LexisNexis has with the furnisher during its reinvestigation. By using inaccurate or misleading dispute codes, LexisNexis fails to provide the furnisher with all relevant information about the consumer's dispute and fails to fulfill its reasonable reinvestigation obligations.

47. In addition to transmitting misleading, confusing, or inaccurate dispute codes to furnishers, LexisNexis also fails to always include relevant consumer submitted documentation with the ACDV transmitted to the furnisher, despite Company policy requiring agents to do so. Relevant consumer documentation often contains information that is not conveyed elsewhere on the ACDV, including probative evidence that supports the merits of the consumer's dispute. As a result, LexisNexis fails to provide the furnisher with all relevant information about the consumer's dispute and fails to fulfill its reasonable reinvestigation obligations.

48. These failures hinder the reinvestigation. As a result of the above, LexisNexis fails to conduct a reasonable reinvestigation and convey all relevant information to furnishers, which causes or increases t he risk that inaccurate information remains in consumers' files. LexisNexis Over-relies on Furnishers' ACDV Responses during its Reinvestigation Even When Presented with Information Suggesting that the

Furnisher is Unreliable.

50. LexisNexis regularly over-relies on furnishers' ACDV responses when conducting a reinvestigation, even when LexisNexis possesses information that alerts or should alert LexisNexis to the possibility that the furnisher of the disputed information might be unreliable. As a result, LexisNexis permits inaccurate information to remain in consumers' files. LexisNexis does so even though cost effective measures exist to resolve any outstanding factual issues.

51. LexisNexis's over-reliance on furnishers' ACDV responses occurs in at least three categories of disputes: disputes where consumer documentation provides highly probative evidence about the dispute, disputes where LexisNexis itself possesses relevant information about the dispute in its own consumer files, and disputes where LexisNexis receives illogical and inconsistent ACDV responses from furnishers.

52. Consumers often provide documentation that, at a minimum, should put LexisNexis on notice that reinvestigation beyond the furnisher's ACDV response is necessary. For example, consumers frequently provide LexisNexis with the date or case number of a bankruptcy petition discharging a particular debt that is still being reported on their consumer report, or documents reflecting an agreement to settle a debt for a certain amount. In other instances, consumers provide LexisNexis documentation showing that the furnisher had previously agreed to delete or correct information in the disputed tradeline

53. Such documents are sufficient to put LexisNexis on notice that the furnisher may have transmitted unreliable information. Yet, LexisNexis regularly gives the supporting documents no weight in resolving the dispute and routinely conducts no further reinvestigation of the dispute beyond the furnisher's ACDV response.

54. Next, LexisNexis frequently possesses relevant supporting information in its own consumer files that should alert it to a furnisher's unreliability. For example, LexisNexis often possesses information confirming the existence of a bankruptcy fitting the description in the consumer's dispute, or

information confirming that a consumer has made a settlement payment. Often this information alerts or should alert LexisNexis to the possibility that the tradeline disputed by the consumer might be inaccurate and the furnisher might be unreliable. Yet, LexisNexis routinely conducts no additional reinvestigation based on this information, and instead relies solely on the furnisher's ACDV response to resolve the dispute.

55. Finally, LexisNexis frequently receives furnisher responses that contain data that is either illogical or facially and internally inconsistent, but it still accepts the furnisher's response without further reinvestigation into the dispute.

56. For example, LexisNexis receives ACDV responses with inconsistent information, such as indicating a consumer's overdue balance is greater than the total amount due. Other ACDV responses state that a consumer first became delinquent on an installment debt a month after the consumer had paid the account to a zero-dollar balance.

57. Receiving an ACDV with illogical or inconsistent data is alerts or should alert LexisNexis to the possibility that the original furnisher of the information might be unreliable and the disputed information may be inaccurate. Yet, LexisNexis regularly accepts the ACDV response in those circumstances and ignores the fact that it contains illogical or inconsistent information.

58. In some instances where LexisNexis receives illogical responses from furnishers, LexisNexis partially implements the furnisher's ACDV response on the consumer's trade line, but also unilaterally alters the information in the ACDV to make it appear logical and consistent. In doing so, LexisNexis does not take steps to ensure that the changed trade line is in fact complete and accurate; LexisNexis simply changes the tradeline by applying predetermined business rules. LexisNexis does not, for example, verify the changes with the furnisher, base the changes on another reliable source of information, or confront the furnisher with the apparent error.

59. To the detriment of consumers, in all of the above-described scenarios, LexisNexis routinely does

nothing more than send an ACDV to the furnisher and implement its response. 60. LexisNexis does so without consulting readily available, inexpensive third-party sources of information, such as bankruptcy court records, that could accurately and definitively resolve the consumer's dispute. And LexisNexis routinely does not pose any queries to the furnisher for specific factual information, such as the authenticity of a document, the existence of a settlement agreement, or why the furnisher's response appears to be internally illogical and inconsistent. 61. LexisNexis's failures to conduct reasonable reinvestigations negatively impact consumers.

62. First, LexisNexis's over-reliance on furnishers' ACDV responses results in consumer reports maintaining inaccurate information, such as a trade line with an inaccurate status or balance. This inaccurate information can have deleterious impacts on consumers, including lowering their credit score, the denial of credit, housing, employment, or other goods or services, or causing consumers to obtain less favorable credit terms.

63. Additionally, consumers waste their time and resources submitting disputes that are not adequately reinvestigated and gathering and submitting documents that are given no consideration in the dispute process. LexisNexis Fails to Inform Consumers of Reinvestigation Results

64. At the conclusion of a reinvestigation, LexisNexis sends consumers written "results letters" intended to fulfill its statutory obligation to report the results of the reinvestigation.

65. LexisNexis's results letters include an initial section labeled "How to Read Your Results" which lists the possible reinvestigation outcomes of "Deleted," "Remains," "Updated," and "Processed" and their accompanying definitions. Notably, LexisNexis defines "Updated" four different ways, some of which indicate information other than the disputed information was updated.

66. letter: Below is an example of the relevant portion of an LexisNexis results

67. Directly below that, LexisNexis lists the disputed accounts and the reinvestigation outcome for each.

68. On subsequent pages, LexisNexis typically displays a snapshot of how the disputed account appears before and after the reinvestigation. However, the "after" snapshot of the account often looks nearly identical to the "before" snapshot, and the results letter does not explicitly identify what information was updated or changed. Instead, consumers are required to deduce that on their own. In cases of deleted trade lines, no snapshots are provided.

69. Lexisnexis has failed Ms. Killian-Morris and other Consumers with their unfair trade practices and total disregard for the human toll faced by families as they continue to fail in their duty to address incaccuracies and harmful results from the inaccuracies provided by their company to others.

## DAMAGES

The Plaintiff prays that this court will consider the amount request and any other fees and fines and other damages that are in this courts discretion, herein, Plaintiff is requesting $250,000 in damages as it relates to the following,

a. Punitive
b. Compensatory
c. General
d. Pain and Suffering
e. Loss of Enjoyment
f. Consequential and Emotional Anguish

Respectively Submitted,

_____, Date: 7/28/25

Killian Morris